UNITED STATES of America, Plaintiff-Appellee,

v.

Jesus Humberto MUNOZ–GUERRA, Defendant-Appellant.

No. 85–2361.

United States Court of Appeals, Fifth Circuit.

April 28, 1986.

Robert J. Salinas, Mercedes, Tex., for defendant-appellant.

Henry K. Oncken, U.S. Atty., James R. Gough, Jr., Susan L. Yarbrough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before JOLLY and HILL, Circuit Judges, and HUNTER,* District Judge.

ROBERT MADDEN HILL, Circuit Judge:

Appellant Jesus Humberto Munoz-Guerra was charged in a six-count indictment with conspiring to possess and possessing marijuana and cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846. When Munoz-Guerra's motion to suppress physical evidence was denied by the district court he entered a conditional plea of guilty to count three of the indictment.[1] In this appeal Munoz-Guerra challenges the denial of his motion to suppress, claiming that the warrantless search of a condominium which he occupied violated his fourth amendment rights. Finding that the government's proof falls short of that required to overcome the presumption that warrantless searches are unreasonable, we reverse the district court's order denying Munoz-Guerra's motion to suppress and vacate Munoz-Guerra's judgment of conviction.[2]

## I.

On January 28, 1985, the police department in Mission, Texas, received an anonymous tip on its Crimestoppers' telephone line. The caller told the police that she had seen about three hundred pounds of mari-

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. The remaining five counts were dismissed on the government's motion.

2. Fed.R.Crim.P. 11(a)(2) provides:
   (2) Conditional Pleas. With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.

Accordingly, on remand Munoz-Guerra must be afforded the opportunity to withdraw his guilty plea and plead again.

juana in cardboard boxes in an otherwise empty condominium at 2216 North Mayberry in Mission. The caller also stated that she had seen a large amount of money and some white powder in a briefcase there and that a brown-over-brown Ford pickup truck with California license plates and two other cars were parked at the condominium. Finally, the caller gave a description of the occupant of the condominium and stated that he had firearms.

Two police officers thereupon proceeded to 2216 North Mayberry, where they saw a brown pickup truck and a man who fit the caller's description. Determining that the information provided by the caller was good, the officers then asked for assistance from the federal Drug Enforcement Administration (D.E.A.). Several D.E.A. agents arrived, and surveillance of the premises continued. Shortly afterwards a blue van stopped at the address, and a man and a woman got out of the vehicle and went into the condominium. After twenty or thirty minutes, the couple returned to the van and the woman was carrying a brown briefcase like that described by the anonymous caller.

After the van departed, D.E.A. Agent Dennis Bryant walked along the side of the condominium towards the back. On the sill of a ground-floor window he saw the butt of a large marijuana cigarette and a gray box in which scales are customarily packed. On the floor he saw a small bag containing white powder. Joined by Agent Keiffer, Agent Bryant climbed over a fence that enclosed a small patio, set into the side of the condominium. When Munoz-Guerra responded to the agents' knocks on the patio door they ordered him to put his hands on the glass panes of the door, and then to reach down and open the door. The door was locked and Munoz-Guerra indicated that he would go into another room to get a key. Believing that Munoz-Guerra might retrieve a weapon or attempt to destroy evidence, the agents kicked the door in and entered the condominium. Once inside the agents conducted a security search of the unit, during which they saw a large quantity of marijuana, some cocaine and two pistols.

The district court held that the drugs visible from outside the window were within Agent Bryant's plain view and thus established probable cause for the search. The court further held that the warrantless search was reasonable in light of the exigent circumstances which prompted the D.E.A. agents to break into the condominium. On appeal, Munoz-Guerra asserts three grounds of error. He maintains (1) that Agent Bryant's discovery of the drugs inside the window does not fall within the plain view exception; (2) that there was no probable cause for the search; and (3) that exigent circumstances did not relieve the D.E.A. agents of their responsibility to obtain a warrant. Because we agree with Munoz-Guerra that the warrantless search of the condominium was not excused by exigent circumstances, we do not reach the first two grounds of error.

## II.

◼ A warrantless search is *per se* unreasonable unless the government can demonstrate that it falls within one of a carefully defined set of exceptions to the fourth amendment's warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75, 91 S.Ct. 2022, 2042, 29 L.Ed.2d 564 (1971); *United States v. Nieto*, 510 F.2d 1118, 1119 (5th Cir.), *cert. denied*, 423 U.S. 854, 96 S.Ct. 101, 46 L.Ed.2d 78 (1975); *United States v. Soriano*, 482 F.2d 469, 472 (5th Cir.1973). In the instant case, the government claims that the search of the condominium was justified under *Arkansas v. Sanders*, 442 U.S. 753, 759, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235 (1979), in which the Supreme Court excepted from the warrant requirement "those cases where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral Magistrate." Were we to confine our attention to the D.E.A. agents' predicament when Munoz-Guerra (a suspected armed drug-dealer) left them standing at the patio

door, purportedly to retrieve a key from an adjoining room, we would dispense with the requirement of a warrant and affirm the district court's denial of Munoz-Guerra's motion to suppress. Our attention, however, is not so confined.

■ In *United States v. Thompson*, 700 F.2d 944, 950 (5th Cir.1983), we held that the government could not justify a warrantless search on the basis of exigent circumstances of its own making. *See also United States v. Scheffer*, 463 F.2d 567, 575 (5th Cir.), *cert. denied*, 409 U.S. 984, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972). Agents Bryant and Keefer knew when they knocked on the patio door that, once having made their presence known to Munoz-Guerra (and possibly to other occupants) it would be necessary to conduct a security search of the premises and to restrain the condominium's inhabitants. Warrantless entry was thus a foregone conclusion the instant the agents revealed themselves to Munoz-Guerra at the patio door. The question before this court, then, is whether exigent circumstances justified the agents' initial decision to approach the patio door. If not, we are compelled under *Thompson*, 700 F.2d 944, to find that the warrantless entry was unreasonable.

### III.

■ After scrutinizing every word and every pictorial exhibit in the record we are unable to construct even so much as a hypothetical justification for the actions of Agents Bryant and Keefer. The condominium, the last on the left in a row of one-story dwellings, had three exposed sides. There were three exits: the front door facing the street, the garage door facing the rear, and a side patio door opening onto an enclosed patio on the left side between the living quarters and the garage. There were windows on only two sides of the unit, on the left side and in the front. The back of the unit had no windows. The Mission Police Department and the D.E.A. surveilled the front of the condominium undetected.[3] In back of the condominium (where the officers' activities could be seen only by opening the garage door) there was an open field and, beyond that, a highway from which the officers could have inconspicuously watched the condominium.

■ Our past opinions have consistently emphasized that without reason to believe that a criminal suspect was aware of police surveillance, the mere presence of firearms or destructible, incriminating evidence does not create exigent circumstances. *See, e.g., Thompson*, 700 F.2d at 948; *United States v. Webster*, 750 F.2d 307, 326 (5th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985); *United States v. Cravero*, 545 F.2d 406, 414–15 n. 24 (5th Cir.1976) (en banc), *cert. denied*, 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977). In the instant case, it was possible to secure the condominium covertly from the outside. There was no basis, on these facts, for believing that resort to a magistrate would have created risks of a greater magnitude than those which are present in any case where the police have probable cause but delay entry pending receipt of a warrant.[4] Had the police's necessary efforts to secure the premises been visible to the inhabitants or had there been reason to believe that someone within the condominium was in need of immediate succor, the government's position would have merit. The government's argument that swift and

---

3. As described earlier, while the condominium was under surveillance, a blue van drove up to the front of the house. The officers observed a man and a woman alight from the van and enter the house. After twenty to thirty minutes the couple returned from the condominium, the woman carrying a brown briefcase. The record further reveals that later, during a search of the van, a brown briefcase was discovered containing cocaine and a large quantity of cash. Had the presence of the officers been readily visible we are confident that the couple would not have entered the condominium; we are also certain that had Munoz-Guerra been informed of the officers presence he would have closed the blinds on the side window or removed the drugs from view.

4. In fact two officers were on the way to secure a warrant when the search of the condominium took place.

immediate action may have minimized risks to human life and physical evidence, however, misses the mark. Our fourth amendment jurisprudence contemplates that protection of individual rights of privacy will be achieved at some cost to society's interest in public safety; and, in the ordinary case the risk that a criminal suspect will become aware of covert surveillance is deemed insignificant in contrast to the more substantial benefits we all derive from the procedural safeguards of judicial process.

This being the ordinary, not the extraordinary case, we REVERSE the suppression of Munoz-Guerra's motion to suppress, VACATE his judgment of conviction, and REMAND so that he may plead anew.