**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-11235

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

RAYMOND LEE JONES,

Defendant-Appellant.

Appeal from the United States District Court
For the Northern District of Texas

January 22, 2001

Before DUHÉ and PARKER, Circuit Judges, and FOLSOM[*], District Judge.

ROBERT M. PARKER, Circuit Judge:

This case involves the constitutionality of a police officer's intrusion into an individual's home to seize a handgun in plain view to officers standing outside. The defendant, Raymond Lee Jones, filed a motion to suppress in which he argued that the officer's intrusion into his apartment to secure the firearm violated his Fourth Amendment right to be free from unreasonable

---

[*]District Judge of the Eastern District of Texas, sitting by designation.

1

searches and seizures. The district court denied the motion, and a jury convicted Jones for illegally possessing a firearm in violation of 18 U.S.C. § 922(g).[1] Jones properly preserved error for this Court's review and timely appealed. Jones argues that the exclusionary rule mandates suppression of the handgun and any statements he made prior to receiving *Miranda* warnings.

## I.

When reviewing a trial court's denial of a defendant's motion to suppress evidence, this Court may consider the evidence admitted at both the suppression hearing and the trial. *See United States v. Rico*, 51 F.3d 495, 504 (5th Cir. 1995) (quoting *United States v. Basey*, 816 F.2d 980, 983 n.1 (5th Cir. 1987)). On February 23, 1999, five Dallas police officers arrived at 1818 Park Row, an apartment house in Southeast Dallas, to investigate complaints of illegal drug sales. The officers obtained information from the Inner Community Policing unit that citizens were complaining about drug activity inside the apartment house, specifically in Apartment No. 3. In addition, Officer Ruff, the lead officer in the investigation, encountered a woman leaving the apartment house who claimed she went to Apartment No. 3 to buy drugs. Because Officer Ruff believed that he did not have probable cause to obtain a search warrant, he decided to knock on the apartment's door in order to identify the occupants and further investigate the complaints.

---

[1] "It shall be unlawful for any person . . . (1) who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g).

Officer Ruff and two other officers entered the small common area of the apartment house and approached the entrance to Apartment No. 3. The remaining two officers waited outside. The door leading to Apartment No. 3 stood ajar, but the screen door was shut, giving the officers a clear view into the small apartment.

Officer Ruff approached the screen door, knocked, and announced his presence. At this time, Jones was standing with his back to the door near a kitchen table. A handgun rested on the kitchen table in plain view to the officers in the doorway. Another man sat on a nearby couch. During the seconds that followed, Jones unlocked the screen door and began talking to the police in the common area. Officer Ruff entered the apartment and secured the gun on the kitchen table. After securing the weapon, Officer Ruff asked if Jones had been convicted of a felony. Jones answered that he had. Officer Ruff placed Jones under arrest and recited the *Miranda* warnings. Jones then told the officers that the gun belonged to him.

Following the hearing on Jones' motion to suppress, the district judge ruled that the officers had probable cause to search the apartment and that the presence of the handgun in plain view created exigent circumstances to justify the warrantless intrusion into Jones' apartment. Jones argues on appeal that the officer's entry was unreasonable. He also claims that his statement concerning his prior felony conviction was the product of a custodial interrogation without the required *Miranda* warnings.

## II.

A warrantless intrusion into an individual's home is presumptively unreasonable unless the person consents or probable cause and exigent circumstances justify the encroachment. *See*

3

*Steagald v. United States*, 451 U.S. 204, 211 (1981); *Payton v. New York*, 445 U.S. 573, 586 (1980); *United States v. Vega*, 221 F.3d 789, 798 (5th Cir. 2000). The exigencies supporting a warrantless search may not, however, "consist of the likely consequences of the government's own actions or inaction." *Vega*, 221 F.3d at 799. Jones argues that the government failed to prove that Officer Ruff's observation of the handgun was an exigent circumstance, or, in the alternative, that the officers' appearance in his doorway manufactured the exigency.[2]

"We review a district court's denial of a motion to suppress by viewing the facts in the light most favorable to the prevailing party (here, the government), accepting the district court's factual findings unless clearly erroneous, and considering all questions of law de novo." *Rico*, 51 F.3d at 501. The presence of exigent circumstances is a finding of fact, which is reviewed for clear error. *See United States v. Richard*, 994 F.2d 244, 248 (5th Cir. 1993).

---

[2]In order to vindicate a warrantless search by proving exigent circumstances, the government must also show probable cause. *See Vega*, 221 F.3d at 798. The district judge held that the local complaints and the statement against penal interest given by the woman exiting the apartment were sufficient to establish probable cause to believe that illegal drugs were present in Apartment No. 3. *See United States v. Harris*, 403 U.S. 573, 583 (1971) ("Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility--sufficient at least to support a finding of probable cause to search."). Jones does not specifically dispute the district court's conclusion on appeal; rather, he contends that the officers did not have probable cause to enter the apartment to seize the handgun. Indeed, the officers had no reason to believe that the handgun belonged to a felon when they saw it on the kitchen table. In contrast, the district court held that the officers had probable cause concerning illegal drug trafficking. Because Jones does not specifically dispute this finding on appeal, we will not disturb the district court's conclusion.

The possibility that evidence will be removed or destroyed, the pursuit of a suspect, and immediate safety risks to officers and others are exigent circumstances that may excuse an otherwise unconstitutional intrusion into a residence. *See Richard*, 994 F.2d at 248. "Because it is essentially a factual determination, there is no set formula for determining when exigent circumstances may justify a warrantless entry." *United States v. Blount*, 123 F.3d 831, 837 (5th Cir. 1997), *cert. denied*, 522 U.S. 1138 (1998). This Court has looked to the following non-exhaustive list of factors to assess whether an exigency justifies a warrantless search:

> (1) the degree of urgency involved an the amount of time necessary to obtain a warrant;
> (2) the reasonable belief that contraband is about to be removed;
> (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought;
> (4) information indicating that the possessors of the contraband are aware that the police are on their trail; and
> (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.

*Blount*, 123 F.3d at 837; *Rico*, 51 F.3d at 501; *Richard*, 994 F.2d at 248.

This Court has consistently held that the presence of a firearm alone does not create an exigency without reason to believe that a suspect is aware of police surveillance. *See United States v. Munoz-Guerra*, 788 F.2d 295, 298 (5th Cir. 1986). Once Officer Ruff stood before the screen door and knocked, the residents were cognizant of the officers' presence. Jones approached the door in

5

a passive manner, but the handgun remained a short distance from the other occupant. A firearm that is located a short distance from an occupant in a residence likely containing illegal narcotics presents an obvious safety risk to law enforcement officers. *See United States v. Howard*, 106 F.3d 70, 75 (1997) (finding that narcotics trafficking alone may present safety risks to law enforcement officials because firearms are considered tools of the drug trade). Given the highly deferential standard for reviewing a district court's factual conclusions, we do not think that the district court clearly erred in finding that exigent circumstances arose prior to Officer Ruff's entry. *See Blount*, 123 F.3d at 839.

The government's own action or inaction, however, cannot be the likely cause of an exigent circumstance. *See Vega*, 221 F.3d 789, 798 (5th Cir. 2000). In assessing whether the officers created the exigency, we focus on the "reasonableness of the officers' investigative tactics leading up to the warrantless entry." *Blount*, 123 F.3d at 838.

Federal courts have recognized the "knock and talk" strategy as a reasonable investigative tool when officers seek to gain an occupant's consent to search or when officers reasonably suspect criminal activity. *See United States v. Tobin*, 923 F.2d 1506, 1511 (11th Cir.) ("Reasonable suspicion cannot justify the warrantless search of a house, but it can justify the agents' approaching the house to question the occupants."), *cert. denied*, 502 U.S. 907

6

(1991); *United States v. Hardeman*, 36 F. Supp. 2d 770, 777 (E.D. Mich. 1999) (discussing the "knock and talk" procedure to obtain a suspects consent to search). Officer Ruff testified that his purpose in approaching Apartment No. 3 was to identify the occupants and discuss the complaints of drug activity. This investigative tactic is not inherently unreasonable.

Jones, relying primarily on this Court's decision in *Munoz-Guerra*, argues that the danger presented by the handgun would not have arisen but for the officers' approaching his apartment. In *Munoz-Guerra*, law enforcement officials received an anonymous tip that individuals were stashing illegal drugs in an empty condominium. The informant described the occupants and alerted the police to the presence of firearms. After corroborating this information, the local police requested the help of the Drug Enforcement Agency. During surveillance of the condominium, one of the DEA agents observed illegal drugs through a window on the ground floor. Two agents then climbed over the backyard fence and knocked on the patio door. When the suspect answered, the agents ordered him to place his hands on the glass panes and slowly open the door. The defendant told the officers that he needed to find the appropriate key. Fearing that the suspect might retrieve a gun or destroy evidence, the agents kicked open the door and entered the condominium. In reversing the trial court's decision to admit evidence discovered during the search, we held that the officers

7

created the exigency by approaching the defendant's condominium "under circumstances that were likely to necessitate a protective search of the home." *Vega*, 221 F.3d at 799 (analyzing the facts in *Munoz-Guerra*).

Our decision in *Munoz-Guerra* placed particular emphasis on the DEA agent's observation of illegal drugs through the condominium's window before knocking on the patio door. Once the agents were certain that the occupants were involved in criminal activity, a reasonable "knock and talk" investigation would have been nugatory. In contrast, the officers in this case did not observe any criminal activity before approaching Jones' apartment that would nullify the purpose of a "knock and talk" investigation. The officers did not know that the occupants of Apartment No. 3 were armed until they were directly in front of the open apartment door.[3] Because the officers were not convinced that criminal activity was taking place and did not have any reason to believe that the occupants were armed, the "knock and talk" procedure was a reasonable

---

[3]In *United States v. Vega*, officers created exigencies when, relying on corroborated information that the suspects were armed and involved in drug trafficking, they surrounded the suspect's residence without a warrant or probable cause. This Court noted that, before entering the house, "none of the officers had seen any signs that these as yet unknown men possessed any drugs, money, or weapons." *Vega*, 221 F.3d at 794. Unlike the officers in *Vega*, Officer Ruff entered the common area, stood before the apartment door, and immediately observed a handgun near the two occupants.

8

investigative tactic under the circumstances.[4]

This Circuit has limited the exigent circumstances exception to situations when a suspect detects law enforcement surveillance rather than when officers' make their presence known. In *United States v. Richard*, officers approached a motel room looking for a man suspected of drug trafficking. After the officers knocked on the door and announced their presence, they heard people talking softly and drawers slamming. Fearing that they were in danger and that evidence was being destroyed, the officers entered the room. On appeal, this Court affirmed the trial court's finding that officers created the exigent circumstances by announcing their presence when they could have easily waited for a search warrant.

The exigent circumstances in this case are very different from those created by the officers in *Richard*. Officer Ruff reasonably approached Apartment No. 3 to investigate complaints of criminal activity. He stood before an open door and observed a handgun resting on the kitchen table.[5] Jones, not the police officers,

---

[4]Law enforcement officials are not required to obtain a warrant at the first possible opportunity. *See United States v. Rodea*, 102 F.3d 1401, 1409 (5th Cir. 1996). Because the officers' "knock and talk" investigation was reasonable, we do not need to determine whether or not the officers had sufficient time to acquire a search warrant before approaching Jones' apartment.

[5]An individual does not have the same expectation of privacy concerning articles that can be seen in plain view through a voluntarily opened door as opposed to the privacy one expects when a door is closed. *See United States v. Santana*, 427 U.S. 38 (1976) (holding that a suspect cannot claim a privacy interest after exposing herself to public view through an open doorway); *United*

caused the exigent circumstances by leaving the door open and a handgun in plain view to anyone standing outside. *See Rico*, 51 F.3d at 506 (warrantless entry was justified when the suspects created the exigent circumstances).

After entering the common area and standing in front of the screen door, the officers were clearly visible to the occupants. Because the officers had already entered the confined common area, turning away from the screen door and exiting the apartment house would have been unreasonable under the circumstances. Because the occupants of Apartment No. 3 created the safety risk to the officers by leaving the door open to the apartment and placing a handgun in plain view of anyone who appeared at the door, we do not think the officer's reasonable investigation created the exigency. Under these very limited circumstances, Officer Ruff's entry into Jones' apartment was justified to ensure his safety and protect his fellow officers.

### III.

Jones also claims that the district court erred by failing to suppress statements he made before the officers recited the *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Jones claims that he was in custody when Officer Ruff entered his

---

*States v. Gori*, 230 F.3d 44, 53 (2nd Cir. 2000) ("Once the apartment was opened to public view by the defendants in response to the knock of an invitee, there was no expectation of privacy as to what could be seen from the hall.").

apartment and questioned him about his criminal history. *See United States v. Bengivenga*, 845 F.2d 593 (5th Cir.) (en banc), *cert. denied*, 488 U.S. 924 (1988).

Even if Jones was subject to a custodial interrogation without receiving the appropriate *Miranda* warnings, "reversal is not automatic, as such unforewarned statements may have been harmless." *United States v. Harrell*, 894 F.2d 120, 123 (5th Cir.), *cert. denied*, 498 U.S. 834 (1990). When a defendant makes a voluntary declaration subsequent to a statement made without the *Miranda* safeguards, the "fruit of the poisonous tree" doctrine does not bar the testimony obtained from the second interrogation. *See id*. at 125. In any event, the doctrine does not bar independently discovered evidence. *See United States v. Sheppard*, 901 F.2d 1230, 1234 (5th Cir. 1990).

Jones claims that the trial court should have suppressed the statements he made concerning his prior criminal record. At trial, the government introduced Jones' penitentiary packets, which established that Jones had been convicted of a crime punishable in excess of one year. This evidence alone supports the jury's verdict. Because Jones' criminal record was discovered independently of his original statement, there is no reason to determine whether Jones' initial statement was the product of a custodial interrogation.

Accordingly, we find that the district court properly denied

Jones' motion to suppress and therefore affirm the judgment.

AFFIRMED