### UNITED STATES of America

v.

### Michael MERCADEL

### No. CRIM.A.02–170.

United States District Court,
E.D. Louisiana.

Aug. 27, 2002.

---

Maurice Landrieu, U.S. Attorney's Office, New Orleans, LA, for U.S.

Gary V. Schwabe, Jr., Federal Public Defender, New Orleans, LA, for Michael Mercadel.

### ORDER AND REASONS

BARBIER, District Judge.

Before the Court is the Motion to Suppress filed by defendant, Michael Mercadel. Rec. Doc. 13. The Government opposes the motion. The Court held an evidentiary hearing on July 17, 2002, and subsequently ordered counsel to file additional briefs. On August 19, 2002, briefing was complete and the matter was submitted to the Court. Having presided over the hearing and observed the demeanor of the witnesses, and having reviewed the transcript of the hearing, the memoranda of counsel, and applicable law, the Court finds that defendant's mo-

tion should be **GRANTED** for the reasons which follow.

### Background

Many of the material facts in this case are in dispute, and the Court must confess that the evidentiary hearing in this matter did little to resolve the confusion concerning the actual events of May 20, 2002, because the Court did not find either Sergeant Morrell's testimony or the defendant's to be credible. Indeed, on certain critical facts, the testimony appeared patently incredible, such as Sergeant Morrell's testimony that in the course of doing a good deed for an apprehended felon, he found himself perched on his toes on the threshold of the defendant's front doorway, from which he was able to peer through a narrow gap above a sheet covering the door, block out the glare of the noonday sun by cupping his hands around his eyes, and observe marijuana on a table in the front room. The Court simply does not buy this version of the facts, which is the only possible explanation for how the marijuana could have come into Sergeant Morrell's plain view.[1] Because the government's sole basis for opposing the motion to suppress rests on its contention that the contraband was in plain view of Sergeant Morrell, this finding alone requires that the motion to suppress must be granted. However, the Court also observes that even if it accepts as true Sergeant Morrell's version of events, it would not alter the outcome of this motion.

The facts as related by Sergeant Morrell are as follows. On May 20, 2002, at approximately 11:30 a.m., Sergeant Todd Morrell of the New Orleans Police Depart-

---

**1.** How Morrell actually came to be aware of the marijuana in Mercadel's home is anybody's guess, but a likelier scenario might be that upon questioning the driver of the car Morrell supposedly sought to help secure, the driver indicated that the marijuana came from Mercadel's Allen Street home. In that event—which the Court considers infinitely more likely—his awareness of the marijuana in Mercadel's home would have come from a tip rather than from his own observation.

ment discovered a quantity of marijuana in the possession of a driver he had apprehended for a traffic violation. *See* Tr. at 5. Having placed the driver under arrest, Sergeant Morrell asked the driver how he wished to provide security for the vehicle. *See id.* The driver responded that his cousin lived "three doors down," and that the vehicle could be secured at his cousin's house. *Id.* at 6. Sergeant Morrell contacted another police unit, which arrived to secure the driver. *See id.* Sergeant Morrell proceeded to 2615 Allen Street to see about securing the vehicle.[2]

The testimony of Sergeant Morrell and that of the defendant, Michael Mercadel, differ on almost every significant point as to what took place at 2615 Allen Street. According to Sergeant Morrell, upon arriving at 2615 Allen Street, he noticed that the front door was open, but that a screen door was closed. *See id.* He claims to have looked through the screen door,[3] observed "a large quantity of marijuana,"[4] and "smelled marijuana smell, like burning marijuana."[5] *Id.* at 6, 9. There is no indication in the record that the occupants of 2615 Allen Street were aware of Sergeant Morrell's presence at this time. Sergeant Morrell retreated from the door and contacted Officer Gisevius.[6] Upon Officer Gisevius' arrival, Sergeant Morrell re-approached the house and, for the first time, knocked on the door. *See id.* at 6, 13.

The door was answered by the defendant, Michael Mercadel. *See id.* Sergeant Morrell asked the defendant to step outside, which he did. *See id.* Sergeant Morrell informed the defendant that he was conducting a narcotics investigation, and Officer Gisevius secured Mercadel.[7]

2. By this time, Sergeant Morrell had ascertained that the vehicle was a company vehicle and did not belong to the driver. Seeking to secure a vehicle with a relative of a driver who is not the owner of the vehicle is evidently not the policy of the NOPD. *See id.* at 12, 18–20. Sergeant Morrell admits in his testimony that he was attempting to "do [the driver] a favor" and "be a nice guy." *Id.* at 11–12. The driver at this time was under arrest for possession of approximately one kilogram of marijuana. *See id.* at 10.

3. As mentioned above, in order to be able to see through the screen door, which was partially obscured by a sheet, Sergeant Morrell (who testified that he is "six-three-and-a half," *id.* at 16) stood on his toes on the two-inch wide threshold of the door and cupped his hands around his eyes to defeat the glare of the noonday sun. *See id.* at 23. As previously stated, the Court is skeptical that this happened at all. In addition to the other obvious logistical difficulties presented by Sergeant Morrell's version of events, the Court notes that investigator Bill Healy testified that on June 5, 2002 he attempted to peer into the residence from the same vantage point as Sergeant Morrell did, and he was unable to see anything: "I tried pressing my face and hands over to kind of shield the glare. It was around noon, so the sun was directly overhead. But even with that, I couldn't see inside. I couldn't make any details out inside." *Id.* at 33.

4. The government now asserts that Sergeant Morrell also saw the defendant and Mr. Goodman through the screen door, *see* Government's Response to the Court's Inquiries ("Gov't Resp."), Rec. Doc. 22, at 2, but this was not revealed in Sergeant Morrell's testimony.

5. Testimony indicates that the defendant passed a drug test administered by the police later that day. *See id.* at 15.

6. *See* Tr. at 6, 13. It is unclear from the testimony whether Officer Gisevius was already at the scene. It appears that he was not accompanying Sergeant Morrell, and either was part of the backup unit called to secure the driver, or was a third unit called at this time.

7. Sergeant Morrell's testimony does not indicate that Mercadel was secured at this point, but when Goodman is brought outside, he testified that "he was secured by Officer Gisevius also." Tr. at 6 (emphasis added). In its briefs, the government asserts that Officer Gisevius secured Mercadel at this point. *See*

Sergeant Morrell then opened the screen door[8] and instructed the second occupant of the building, Kevin Goodman, to exit the premises, whereupon he also was secured by Officer Gisevius.[9] At this point, Sergeant Morrell entered the residence.

Having ascertained that the substance he claims to have observed through the door was in fact marijuana, Sergeant Morrell proceeded to conduct a protective sweep of the premises.[10] Although this sweep did not reveal any other occupants, it did reveal two weapons as well as additional marijuana, all evidently in plain view of the officer. *See* Tr. at 7. Sergeant Morrell then placed the defendant under arrest, and the defendant was removed from the scene. *See id.*

Mercadel's testimony (which the Court considers equally suspect) was that there was no marijuana or weaponry for Sergeant Morrell to see, and that the evidence therefore was planted by the police. *See id.* at 37–39.

In the instant motion, defendant alleges that Sergeant Morrell violated his rights under the Fourth Amendment by conducting a warrantless entry, and moves to suppress any and all fruits of this entry. *See* Motion to Suppress Evidence, Rec. Doc. 13, at 2–3.

## *Discussion*

### *The Plain–View Doctrine*

The Fourth Amendment guarantees that people will be "secure in their persons, houses, papers, and effects, against unrea-

sonable searches and seizures..." U.S. CONST. amend. IV. The Supreme Court has zealously guarded this guarantee. In *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Court held that

> [i]t is accepted, at least as a matter of principle, that a search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'

*Id.* at 474–75, 91 S.Ct. 2022. One of these "carefully defined exceptions" is the "plain-view" doctrine, and it is upon this doctrine that the government's argument rests.

The Supreme Court explained the plain-view doctrine in *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993):

> Under [the plain-view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, **and if the officers have a lawful right of access to the object**, they may seize it without a warrant.

*Id.* at 375, 113 S.Ct. 2130 (emphasis added). If any of the three elements of the plain-view doctrine are absent, the police must obtain a warrant before seizing evidence in plain sight.

As noted above, the Court is not convinced that the contraband in question in

---

Government's Response and Memorandum ("Gov't Opp."), Rec. Doc. 14, at 2; Gov't Resp., Rec. Doc. 22, at 3.

8. According to the government's briefs, Sergeant Morrell entered the residence at this point. *See* Gov't Opp., Rec. Doc. 14, at 3; Gov't Resp., Rec. Doc. 22, at 3. In testimony, it is unclear whether he entered at this time or after Mr. Goodman was secured. *See* Tr. at 3.

9. *See id.* According to the government's first brief, the second suspect was secured by an Officer Keller. Officer Keller is not mentioned in Sergeant Morrell's testimony. *See* Gov't Opp., Rec. Doc. 14, at 2.

10. "I then looked around the coffee table and the area surrounding the room to make sure there was no other individual in there or what have you." Tr. at 7.

this case was ever in Sergeant Morrell's plain view until he entered the house (and rather, that he presumed the presence of marijuana in the house based on a tip or surveillance of the house), but the Court will assume for purposes of this analysis that the contraband was in plain sight of Sergeant Morrell from his precarious perch on Mercadel's front stoop, and that its incriminating character was immediately obvious. Assuming this, the critical question is whether the police had a lawful right of access to the contraband.

■ The presence of contraband in plain sight does not itself create the legal access necessary to effect a warrantless entry. *See, e.g., Taylor v. United States,* 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932)(sight and smell of contraband within garage does not justify warrantless entry and seizure of same); *United States v. Jones,* 239 F.3d 716 (5th Cir.2001)(entry into home following officer's plain view of handgun permissible because exigent circumstances were present); *United States v. Munoz–Guerra,* 788 F.2d 295 (5th Cir.1986)(entry into home following officer's plain view of handgun impermissible because exigent circumstances were not present). Once lawfully inside the residence, however, Sergeant Morrell clearly would have a legal right of access to the contraband in his plain sight. Therefore, assuming *arguendo* that the marijuana was in plain view of Sergeant Morrell through the screen door (a point which the Court does not actually believe), disposition of this motion would then turn on whether Sergeant Morrell's entry was legal. Under Supreme Court precedent, police with probable cause may gain warrantless, non-consensual entry if exigent circumstances exist necessitating such entry. *See, e.g., Payton v. New York,* 445

U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

### Exigent Circumstances

At the outset of this discussion, it should be noted that the government addressed the issue of exigent circumstances only after being explicitly instructed to do so by the Court. Its initial motion to suppress did not allude to the necessity or existence of exigent circumstances, nor did the government attempt to elicit testimony to support a finding of exigent circumstances at the hearing on the motion. Instead, the government appears to have proceeded on the premise that if this Court found that the marijuana was in plain view of Sergeant Morrell, no further analysis was necessary.[11]

In its memorandum submitted in response to the Court's order, the government continues to maintain that exigent circumstances were not required to gain entry to defendant's residence because the contraband in question was in Sergeant Morrell's plain view, and thus (according to the government) no warrantless search or entry took place at all. Gov't Resp., Rec. Doc. 22 at 5. In so arguing, the government points the Court to the decisions in *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), *Illinois v. Andreas,* 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983), and *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). While those cases did involve the denial of suppression motions based on reasoning which invoked or analogized the plain-view doctrine, they are easily and obviously distinguishable in that none of them involved entry into a residence, but rather they involve a *Terry* stop (Dickerson); a search of a shipping container (*Andreas*); and an automobile

---

11. In his closing remarks, the Assistant U.S. Attorney asserted that "[t]his case comes down to an issue really of plain view." Tr. at 40.

license checkpoint stop (*Brown*). The dispositive factor in this Court's analysis of the instant motion is that it involves a warrantless entry into a home, a distinction repeatedly emphasized by the Supreme Court in its consideration of Fourth Amendment issues. *See, e.g., Payton,* 445 U.S. at 587, 100 S.Ct. at 1380.

The government acknowledges that "a warrantless intrusion into an individual's home is presumptively unreasonable unless the person consents or probable cause and exigent circumstances justify the encroachment." Gov't Resp., Rec. Doc. 22 at 6, citing *Jones,* 239 F.3d at 719. In view of this standard, the government now advances an alternative argument that the presence of marijuana in Mercadel's home created an exigency necessitating Sergeant Morrell's entry into the residence. Indeed, the government claims that the exigency involved in this case was so obvious that it was unnecessary to adduce any testimony on this point at the hearing. Gov't Resp., Rec. Doc. 22, at 11.

In determining whether exigent circumstances were present to justify a warrantless entry, courts consider the following factors set forth by the Fifth Circuit:

(1) the degree of urgency involved and amount of time necessary to obtain a warrant;

(2) [the] reasonable belief that contraband is about to be removed;

(3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought;

(4) information indicating the possessors of the contraband are aware that the police are on their trail; and

(5) the ready destructibility of the contraband and the knowledge "that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic."

*United States v. Rico,* 51 F.3d 495, 501 (5th Cir.1995); *see also Jones,* 239 F.3d at 720.

Of these factors, it is only the fifth that is implicated by the facts of this case. As noted above, the occupants of the house were unaware of the presence of the police, there was no evidence that the occupants were about to destroy the evidence, and there was no apparent danger to the police. The events took place at approximately noon on a Monday (May 20, 2002), and Sergeant Morrell, having allegedly viewed the marijuana through the screen door, clearly had probable cause, indicating that a warrant could have been easily and speedily obtained. The lack of urgency in the situation is underscored by the fact that Sergeant Morrell was able to summon backup units to the scene at least once and perhaps twice.

Therefore the only exigency that may have justified the warrantless entry into the home is the fact that narcotics were involved. Not only is such contraband easily destructible, but, as the Fifth Circuit has noted, it is often accompanied by firearms. *See United States v. Howard,* 106 F.3d 70, 74 (5th Cir.1997). The government argues that, once Sergeant Morrell reached the reasonable conclusion that the inhabitants of 2615 Allen Street were in the narcotics trade, it was reasonable for him to assume that the inhabitants were armed, and it was imperative for his own safety that he enter and secure the premises. *See* Gov't Resp., Rec. Doc. 22, at 9.

In support of the argument that the presence of weapons (whether visible or merely suspected) creates an exigency justifying a warrantless entry, the government relies on the Fifth Circuit's decision in *United States v. Jones,* 239 F.3d 716 (5th Cir.2001). *Jones* involved a situation which parallels the instant case in some

respects. In *Jones,* the police approached the door of a suspected narcotics dealer. *See id.* at 719. The apartment door was open, but a screen door was shut and locked. *See id.* Through the screen door, the officer could clearly see a handgun on the kitchen table. *See id.* The officer knocked and announced his presence, and when the door was answered by the petitioner, the police entered and seized the handgun. *See id.* The petitioner was subsequently convicted of illegal possession of a firearm. *See id.* The court held that the visible presence of the firearm inside the apartment created an exigency which justified the officer's entry and seizure of the weapon. *See id.* at 722.

The government, however, fails to mention one crucial element upon which the decision in *Jones* rests, and which distinguishes it from the facts at hand. In *Jones,* prior to approaching the door, the officer "believed that he did not have probable cause to obtain a search warrant." *Id.* at 719. The police were investigating on a tip, and had only a reasonable suspicion of illegal activity within the apartment. *See id.* at 720. Under these circumstances, the court held that the "knock and talk" investigative strategy was appropriate. *See id.* Once the "knock and talk" strategy was employed, the defendants knew of the police presence, triggering an exigent circumstance due to the high likelihood of destruction or removal of the evidence.

The *Jones* court distinguished the facts before it from those in *United States v. Munoz–Guerra,* 788 F.2d 295 (5th Cir. 1986). In *Munoz–Guerra,* agents of the federal Drug Enforcement Agency (DEA) approached a condominium which they had had under surveillance for narcotics activity. *See id.* at 297. While investigating outside the condominium, one DEA agent saw certain drug paraphernalia through a window. *See id.* He then decided to climb a fence and approach a patio door. *See id.* He knocked on the door and demanded entry. *See id.* When the petitioner responded that he had to get a key from another room, the agents kicked in the door and, during a security sweep of the premises, seized the evidence the petitioner sought to suppress. *See id.* The court held that the DEA agents had probable cause sufficient to obtain a warrant when they observed the paraphernalia in plain sight through the window, and their decision to approach the patio door was unreasonable. *See id.* at 298. Although an exigency justifying the agent's entry to the condominium undoubtedly existed when the petitioner attempted to leave the room, the court found that the exigency was created by the unreasonable conduct of the agent. *See id.* The entry was therefore unlawful, and the fruits of the search were suppressed.

■ The facts of the instant case more closely resemble the situation in *Munoz–Guerra* on the crucial question of the existence of probable cause. If Sergeant Morrell truly did view marijuana on a table in defendant's home through the screen door, he clearly had probable cause at that point and should have obtained a warrant. The government insists that, due to the presence of numerous policemen in full uniform, as well as several squad cars in the immediate area, it was reasonable for Sergeant Morrell to assume that Mercadel had been alerted to his presence, and therefore his entry was mandated to secure his safety. *See* Gov't Resp., Rec. Doc. 22, at 11. However, Sergeant Morrell's own testimony belies this assumption. According to Morrell, he was unobserved (nor did he observe the defendant) during his first visual inspection of the home when he claims to have seen the marijuana. Sergeant Morrell then retreated from the door, called for backup,

waited for it to arrive, and described the situation to the responding backup officer, before re-approaching and knocking on the door. *See* Tr. at 6. This apparent lack of urgency indicates that Sergeant Morrell assumed that Mercadel was unaware of the police presence in the neighborhood. With probable cause and the lack of an exigency, the proper procedure would have been for Sergeant Morrell to attempt to obtain a warrant, and to maintain surveillance of the property until the warrant was obtained. His decision to confront the defendant was similar to the decision made by the DEA agent in *Munoz–Guerra.* This action was unreasonable under the circumstances, and created the exigency under which he gained entry. A police-manufactured exigency will not justify a warrantless non-consensual entry. "Just as exigent circumstances are an exception to the warrant requirement, a police-manufactured exigency is an exception to the exception." *United States v. Rico,* 51 F.3d 495, 502 (5th Cir.1995). "[I]n analyzing a claim of a manufactured exigency," courts consider "whether agents could have obtained a search warrant prior to the development of the exigent circumstances . . . ." *Id.,* quoting *United States v. Webster,* 750 F.2d 307, 327 (5th Cir.1984). As noted above, there is nothing in the record to suggest that the officers could not have obtained a warrant, and the government does not argue that a warrant was not obtainable within a reasonable period.

> [O]ur precedent makes clear that the government cannot rely on exigent circumstances to excuse a warrantless entry to conduct a protective sweep *if* the circumstances and thus the sweep were made necessary by the law enforcement officers' decision to abandon a covert surveillance and confront the suspects without any justification whatsoever.

*Id.* at 503 (emphasis in original). This is precisely the situation in this case. Thus, the Court concludes that any exigency created by Sergeant Morrell's knock on the door and confrontation with defendant was manufactured by Sergeant Morrell, and could have been avoided.

### *Conclusion*

The Court simply does not credit Sergeant Morrell's testimony that the marijuana seized in this case was in his plain view prior to his entry into defendant's residence. The Court considers it far more likely that he learned of the presence of the marijuana through a tip or suspected it based on surveillance of the residence. Accordingly, for this reason alone, the motion to suppress would be granted. However, even if the Court were to credit Morrell's testimony, that would not affect the disposition of this motion. If Sergeant Morrell had observed a large amount of marijuana from his position outside the defendant's door, that would constitute probable cause for a warrant, but would not alone justify his warrantless entry into defendant's residence and seizure of the contraband. It is well-settled that to enter someone's home without a warrant, the police must have probable cause **and** exigent circumstances. *Payton,* 445 U.S. at 587, 100 S.Ct. at 1380. The record indicates that in this case, Sergeant Morrell could have attempted to obtain a warrant without creating risk to himself or the public, or exposing the evidence to imminent danger of removal or destruction. No exigent circumstances existed which justified the Sergeant's intrusion into the premises of the defendant, except those created by the officer's own conduct, and therefore the entry was in violation of defendant's Fourth Amendment rights. Accordingly;

**IT IS ORDERED** that the **Motion to Suppress** filed by defendant Michael Mercadel should be and is hereby **GRANTED**, and all fruits of the illegal entry must be

excluded as evidence against the defendant.