NO. 07-07-0353-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B 

FEBRUARY 23, 2009
______________________________

KENDRICK L. FAULK, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-413,797; HON. CECIL G. PURYEAR, PRESIDING
_______________________________


Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
MEMORANDUM OPINION
          A jury found appellant Kendrick L. Faulk guilty of possession of cocaine (more than
four grams but less than two hundred grams) with intent to deliver. Appellant plead true
to one enhancement paragraph and the jury sentenced him to 75 years in prison. On
appeal, appellant presents four issues: (1) the trial court erred by not suppressing
contraband seized by a warrantless search of his apartment; (2) the trial court erred by
admitting an oral statement allegedly made by appellant before receiving the statutory
warnings; (3) in the sentencing phase, the trial court erred by failing to suppress evidence
seized in a warrantless search of appellant’s residence in a prior unadjudicated offense;
and (4) in the sentencing phase, the trial court erred by allowing a police officer
investigating a prior unadjudicated offense to opine that a field test yielded a positive
reading for cocaine. We affirm.
Background
          The State’s evidence showed that Lubbock police went to appellant’s apartment to
investigate after receiving an anonymous 9-1-1 call that someone was “cooking” narcotics
there. Eventually, four officers were present. Three stationed themselves near the front
while the fourth covered the rear of the dwelling. The three officers watching the front
observed five to ten people come and go from the apartment. The officers looked through
portions of windows not covered by blinds and saw five males in the apartment living area
and one in the bedroom. Two occupants of the living room counted money at a table. The
officers’ position made them visible to those approaching the apartment. The lead officer
decided to knock on the apartment door. The three officers approached the door,
arranging themselves in single file.


 Appellant opened the door and the officer smelled a
“strong odor of marijuana.” Through the open doorway he saw one occupant near the
kitchen toss a baggy containing a white substance. Another occupant, seated on a couch,
ran from sight down a hallway. The officer drew his gun and demanded all occupants
show their hands. The person who disappeared from view was slow to return and reveal
his hands. Once six people exited the apartment officers entered the apartment to
determine if anyone was hiding and if so to prevent destruction of evidence. In the kitchen,
the lead officer found a bag which he testified contained “cocaine” as well as a scale and
razorblade each bearing white powder residue. Another reported he saw cocaine in the
bathroom toilet. The lead officer then exited the apartment to assist identification of the
occupants. Appellant asked him if officers located an unnamed Hispanic male in the
apartment. Having found no such person, officers reentered the apartment and searched
for another occupant. They found no one but discovered marijuana under a bed. 
          Appellant was charged with possession of a controlled substance and possession
of marijuana and transported to jail. During the booking process he made an oral
inculpatory statement to the lead officer. At the time, appellant had not received the
constitutional and statutory warnings.



          Appellant plead not guilty to the indicted offense of possession of cocaine, with
intent to deliver, in an amount more than four grams but less than two hundred grams. The
case was tried by jury which found appellant guilty of the indicted offense and under an
enhancement paragraph, concerning a prior conviction of possession with intent to deliver
cocaine, assessed punishment at 75 years in prison.
 
Discussion
          In his first issue appellant contends the trial court erred by denying his motion to
suppress evidence seized during the warrantless search of his apartment. 
          We review a trial court's ruling on a motion to suppress evidence for an abuse of
discretion. Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). We give almost
total deference to the trial court's determination of historical facts and then review de novo
the trial court's application of the law to those facts. Wyatt v. State, 23 S.W.3d 18, 23
(Tex.Crim.App. 2000); Carmouche v. State, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000). 
If, as here, the trial court did not make explicit findings of fact, we review the evidence in
a light most favorable to the trial court’s ruling and assume it made implicit findings of fact
supporting its ruling. Carmouche, 10 S.W.3d at 327-28.



          A warrantless search is justified when the State shows that (1) probable cause
existed at the time the search was made and (2) exigent circumstances existed which
made obtaining a warrant impracticable. Estrada v. State, 154 S.W.3d 604, 610
(Tex.Crim.App. 2005); McNairy v. State, 835 S.W.2d 101, 106 (Tex.Crim.App. 1991). 
Probable cause to search a residence exists when reasonably trustworthy facts and
circumstances within the knowledge of the officer on the scene would lead a person of
reasonable prudence to believe that the instrumentality of a crime or evidence of a crime
will be found. Parker v. State, 206 S.W.3d 593, 597 (Tex.Crim.App. 2006); McNairy, 835
S.W.2d at 106. Exigent circumstances allowing a warrantless entry into a house include
(1) rendering aid or assistance to persons whom the officers reasonably believe are in
need of assistance; (2) preventing the destruction of evidence or contraband; and (3)
protecting the officers from persons whom they reasonably believe to be present and
armed and dangerous. McNairy, 835 S.W.2d at 107. Several factors are used in
analyzing whether officers could reasonably conclude that evidence would be destroyed
or removed before they could obtain a search warrant: (1) the degree of urgency involved
and the amount of time necessary to obtain a warrant; (2) a reasonable belief that the
contraband is about to be removed; (3) the possibility of danger to the officers guarding the
site of the contraband while a search warrant is sought; (4) information indicating that the
possessors of the contraband are aware that the police are on their trail; and (5) the ready
destructibility of the contraband and knowledge that efforts to dispose of narcotics and to
escape are characteristic behaviors of persons engaged in the narcotics traffic. Id. 
          Appellant contends the officers manufactured exigent circumstances to justify their
warrantless admission to his apartment. Exigent circumstances do not meet Fourth
Amendment standards “if the government deliberately creates them.” United States v.
Coles, 437 F.3d 361, 366 (3rd Cir. 2006); see United States v. Vega, 221 F.3d 789, 800
(5th Cir. 2000) (finding asserted exigent circumstances were of the government’s “own
making”); see Parker, 206 S.W.3d at 598 n.21 (citing and discussing Coles). Determining
whether officers impermissibly manufactured exigencies depends on “‘the reasonableness
and propriety of the investigative tactics that generated the exigency.’” United States v.
Rico, 51 F.3d 495, 502 (5th Cir. 1995) (quoting United States v. Duchi, 906 F.2d 1278,
1284 (8th Cir. 1990)). 
          Here, appellant’s argument in effect challenges the legitimacy of the officers’ “knock
and talk” intention. He relies primarily on the Fifth Circuit’s opinion in United States v.
Munoz-Guerra, 788 F.2d 295 (5th Cir. 1986). There, during a drug investigation DEA
agents saw a marijuana cigarette and a bag of white powder through the windows of a
condominium. They also had other information corroborating an anonymous tip that the
condominium contained drugs. When they climbed over a patio fence and knocked on the
glass panes of a door, the defendant answered. The door was locked and the defendant
indicated he would go into another room to get a key. The agents did not wait for his return
but kicked the door in. Id. at 297. As the circuit court analyzed the issue whether exigent
circumstances justified their doing so, it found the agents’ warrantless entry was a
“foregone conclusion” once they approached the patio door and made their presence
known. Id. at 298. The court went on to conclude the record provided no justification for
the agents’ decision to approach the door rather than await a warrant. 
          Appellant relies also on two other federal cases


 in which government exigent
circumstances arguments were rejected. In United States v. Richard, 994 F.2d 244 (5th
Cir. 1993), agents kicked in a motel room door. Id. at 247. A supervisor stated the agents
“intended to enter the room one way or another to further [their] investigation.” Id. at 248. 
Similarly, in United States v. Berry, 468 F.Supp.2d 870, 880 (N.D. Tex. 2006), the district
court found officers’ testimony that their entry onto the defendant’s property was merely
for the purpose of a “knock and talk” not to be credible. Id. at 880. The trial court was not
required to view the officers’ testimony here in the same light. We defer to its implicit
acceptance of the officers’ explanation that the decision to knock on appellant’s door was
a reasonable law enforcement tactic


, and that the exigent circumstance arose from the
conduct of the apartment occupants.


 We overrule appellant’s first issue.
          In his second issue, appellant argues the trial court erred by admitting an inculpatory
oral statement made by him at booking because he did not first receive the warnings of
section 38.22 of the Code of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art.
38.22 § 3(a) (Vernon 2005). 
          Article 38.22 codifies the Miranda warnings. Lemmons v. State, 75 S.W.3d 513,
519 (Tex.App.–San Antonio 2002, pet. refused). The Miranda protections against self-incrimination come into issue only when the defendant is subjected to custodial
interrogation. Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694
(1966). During the booking process, or at any other time while a person is in custody,
words, actions or questioning by police that the police should know are reasonably likely
to elicit an incriminating response from the accused constitute custodial interrogation. See
Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980);
Roquemore v. State, 60 S.W.3d 862, 868 (Tex.Crim.App. 2001). Courts have recognized,
however, that questions normally attendant to administrative booking procedure do not
constitute interrogation for purposes of Miranda because such questions normally do not
elicit incriminating responses. See Pennsylvania v. Muniz, 496 U.S. 582, 601, 110 L.Ed.2d
528, 110 S.Ct. 2638 (1990) (plurality op.); Cross v. State, 144 S.W.3d 521, 525 n.5
(Tex.Crim.App. 2004). In deciding whether words or actions constitute interrogation the
relevant inquiry “focuses primarily upon the perceptions of the suspect, rather than the
intent of the police.” Innis, 446 U.S. at 301, 100 S.Ct. at 1690. 
          After finding suspected contraband police arrested appellant and the other
occupants of his apartment and transported them to jail. No one in the group admitted
ownership of the contraband. It is undisputed that at the time of booking appellant was
under arrest and had not received the constitutional and statutory warnings. According to
the lead officer, during the booking process arrestees are asked background questions
concerning identification, contact information, and medical needs. As appellant was
booked he asked the officer to release another arrestee, supposedly a relative of appellant,
because, according to appellant, “It’s mine.” The officer could not remember which
background question preceded this statement but he could recall it was a booking question
that did not concern the offense or evidence. Based on this testimony, the trial court could
have concluded the questions appellant was being asked would not have been perceived
by appellant as seeking an incriminating response and so were not interrogation for
Miranda purposes. The trial court did not abuse its discretion by admitting evidence of
appellant’s oral statement. We overrule his second issue.
          In his third issue, appellant argues the trial court erred by failing to suppress
evidence seized in a warrantless search of his residence in a prior unadjudicated offense. 
          The State began its presentation at the sentencing phase of trial by playing a
recorded 9-1-1 call from Tanisha Shivers, a former girlfriend of appellant. According to the
call, appellant took Shivers from a residence, pushed her into a pickup, and drove from the
scene. An officer responded to a report of Shivers’ kidnapping and received additional
information directing him to appellant’s apartment. Two other officers were also present. 
At the location, the officers found a pickup fitting the description from the 9-1-1 call. An
officer noticed what appeared to be blood on the passenger side of the vehicle’s interior. 
Repeated knocks and announcements at the door of the residence produced no response
but through a window an officer saw a male fitting the description of Shivers’ abductor
walking down a hallway toward a bedroom. An officer then reached through an opening
in the window and opened the door. The officers entered the apartment and encountered
Shivers clad only in a towel. They observed dried blood on her face and swelling around
her nose. She appeared upset at the presence of police and told them she was alone in
the apartment. Officers then searched for the male they observed through the window. 
In the kitchen, they noticed a scale with white residue which an officer agreed in testimony
was consistent with narcotics activity. In the bedroom, officers located appellant. When
told of the discovery in the kitchen and the intention of the officers to seek a search warrant
appellant responded, “‘Anything in the house is mine and I will give you consent.’” The
resulting search produced items of drug paraphernalia that were admitted into evidence.
          Appellant argues that when officers discovered Shivers, the reasonable basis of the
search ended. Accordingly, contends appellant, the trial court abused its discretion by not
suppressing evidence the officers observed in plain view after locating Shivers, as well as
evidence obtained by warrantless search on the consent of appellant. 
          Under the “emergency doctrine,” a warrantless search that would otherwise be
illegal may be authorized if a police officer has reasonable cause to believe that, absent
an immediate search, serious bodily injury or death may result. Brimage v. State, 918
S.W.2d 466, 500-01 (Tex.Crim.App. 1994) (opinion on reh’g). The theory’s objective
standard of reasonableness requires the court examine the officer’s conduct while “tak[ing]
into account the facts and circumstances known to the police at the time of the search.” 
Colburn v. State, 966 S.W.2d 511, 519 (Tex.Crim.App. 1998) (citing Brimage, 918 S.W.2d
at 501). Officers operating legitimately under the emergency doctrine may seize any
evidence in plain view. Mincey v. Arizona, 437 U.S. 385, 393, 98 S.Ct. 2408, 57 L.Ed.2d
290 (1978). The lawfulness of a search under the emergency doctrine terminates once the
emergency ends. Bray v. State, 597 S.W.2d 763, 764 (Tex.Crim.App. 1980). 
          A search conducted after receiving voluntary consent is not constitutionally
unreasonable. Reasor v. State, 12 S.W.3d 813, 818 (Tex.Crim.App. 2000). Voluntary
consent to search must be positive, unequivocal, and not the result of express or implied
coercion or duress. Carmouche v. State, 10 S.W.3d at 331. When challenged, the State
must prove voluntary consent by clear and convincing evidence. State v. Ibarra, 953
S.W.2d 242, 245 (Tex.Crim.App. 1997). The trial court “must look at the totality of the
circumstances surrounding the statement of consent in order to determine whether that
consent was given voluntarily.” Reasor, 12 S.W.3d at 818.  Appellant’s contention that
the emergency ended when officers located Shivers is untenable. The person fitting the
description of the suspected perpetrator of assault and kidnapping, whom officers saw in
the apartment, remained at large but Shivers represented she was alone. Under the facts
at bar, we find the officers’ continued search of the apartment until appellant was located,
reasonable. Cf. Mincey, 437 U.S. 385 at 392, 98 S.Ct. 2408 at 2413 (on discovery of a
potential homicide scene officers may conduct a prompt warrantless search of the
premises for the killer or other victims). We find the trial court did not err in admitting the
scales and residue observed by officers in plain view as they searched for appellant. 
          As one of the investigating officers left to obtain a search warrant appellant verbally
authorized a warrantless search of the apartment. The record contains no evidence of
appellant’s reluctance or qualification of consent. Nor does it reveal duress or coercion. 
Given the totality of circumstances surrounding appellant’s statement of consent, we
conclude the trial court did not err in overruling appellant’s motion to suppress. We,
therefore, overrule appellant’s third issue.
          In his fourth issue, appellant contends the trial court erred by allowing a police
officer investigating the Shivers incident to opine that a field test of a substance yielded a
positive reading for cocaine. 
          At the sentencing phase, the State identified through the investigating officer various
items seized by police in appellant’s apartment following the Shivers incident. Among
these exhibits was the contents of a return envelope from the Texas Department of Public
Safety (DPS) marked as State’s exhibit 67. This envelope contained two envelopes
marked as State’s exhibits 67A and 67B. Each of these envelopes, in turn, held a baggy
and each baggy contained a “white rock-like substance.” 
          The substance in the baggies was tested by the DPS laboratory and by police in the
field. Over objection, the investigating officer testified that a field test showed the
substance was cocaine. During appellant’s cross-examination of the investigating officer,
counsel asked by leading question if a laboratory test of State’s exhibit 67 produced a
positive finding for cocaine. The officer responded, “I believe so.” 
          A police detective conducted a crime scene investigation at appellant’s apartment
following the Shivers incident. Without objection, the detective testified that a photograph
admitted in evidence depicted a white powdery substance found on the floor of appellant’s
apartment, which an officer at the scene believed was cocaine. 
          Assuming, but without deciding, admission of the investigating officer’s testimony
of the field test result was error, we find the error harmless as it did not effect a substantial
right of appellant. See Tex. R. App. P. 44.2(b). Error effects a substantial right if it had a
substantial and injurious effect or influence in determining the jury’s verdict. King v. State,
953 S.W.2d 266, 271 (Tex.Crim.App. 1997). Because evidence of cocaine in appellant’s
apartment following the Shivers incident was admitted elsewhere in the sentencing phase
without objection, any error in allowing the testimony of the investigating officer as to the
field test results was harmless. See East v. State, 702 S.W.2d 606, 611 (Tex.Crim.App.
1985) (admission of inadmissible evidence over a valid objection cannot amount to
reversible error when the same facts are admitted elsewhere without objection). 
          Additionally, during the sentencing phase of trial the State’s evidence of cocaine in
appellant’s apartment following the Shivers incident was but a portion of its case for a
longer sentence. Through the State’s other evidence, the jury learned of several
adjudicated offenses and unadjudicated wrongful acts of appellant including two assaults,
burglary, kidnapping, unlawful discharge of a firearm, marijuana possession, theft of
copywritten music, failure to pay taxes, possession with intent to deliver cocaine, and bail
jumping. Because the error, if any, in admitting the opinion of the investigating officer was
harmless, we overrule appellant’s fourth issue.
Conclusion
          Having overruled appellant’s four issues we affirm the judgment of the trial court.
 
 
 
James T. Campbell

Justice



Do not publish.