# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 28, 2010

No. 08-20619

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

EVERARDO FLORES-CASTANEDA,

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CR-105-1

Before GARZA, DeMOSS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

Appellant Everardo Flores-Castaneda pleaded guilty to conspiracy to transport and harbor undocumented aliens within the United States. Pursuant to his plea agreement, Castaneda reserved the right to challenge the district court's denial of his motion to suppress. We affirm.

## FACTS AND PROCEEDINGS

The facts of this alien smuggling case are particularly disturbing. Immigration and Customs Enforcement Agent Sylvia Snyder was contacted on

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

January 4, 2008, by a woman who claimed that alien smugglers had called her and demanded money for the release of her Brazilian relative, whom the smugglers were holding. The smugglers told the woman that her relative was tied to a tree and would be killed if they did not receive their money. A phone trace revealed that the call originated from Mexico. The woman called Snyder several days later to say that the smugglers had repeated their demands and that she could hear her relative being beaten at the other end of the line. That same day, Snyder received a call from another woman who claimed that she had received calls from alien smugglers threatening to kill her sister and uncle, as well as the wife and child of another man. The calls originated from the same phone number.

In February, both women separately called Snyder to say that the alien smugglers had advised them that their relatives were in the United States. The women were given two new phone numbers at which they were told their relatives could be reached. Both numbers had Houston area codes. By 12:30 p.m. that day, Snyder obtained subscriber information for the new phone numbers and a court order for tracking information. At 1:00 p.m., she dispatched teams to two residences at Hayes Street and Sela Lane in Houston. Snyder did not attempt to obtain a search warrant because of time constraints.

The first team went to the Sela Lane home of Flores-Castaneda to conduct a "knock and talk" investigation and obtain consent to search the home. A Spanish-speaking agent approached the home, accompanied by another agent, while the other members of the team surrounded the house, some several feet behind the two agents and others spread out around the house. One of the agents at the door had his gun drawn but pointing down to the ground and hidden behind his leg. The agents knocked on the door and identified themselves as police officers in both English and Spanish. An individual answered that he was coming to the door but that he had to get dressed. The agents later testified

that they heard movement inside the house and grew concerned that the man was obtaining a weapon or destroying evidence.

After approximately two minutes, Flores-Castaneda opened the door. The agents asked Flores-Castaneda to step outside and requested consent to search his home. Flores-Castaneda asked whether the officers had a warrant and declined to consent to a search. As the discussion continued, the agent who had his gun drawn observed a second individual within the house. The agent asked the man to come to the door but the man turned and ran into the interior of the home. Fearing that the man was attempting to obtain a weapon, the agents rushed the house. Once inside, the agents discovered firearms and 17 undocumented aliens, including several of the relatives of the women who had first alerted Snyder. A search of the second house uncovered more hostages and lead to further arrests.

Flores-Castaneda was charged in a one-count indictment with conspiring to transport and harbor undocumented aliens. He filed a motion to suppress all evidence seized in connection with the search of his home, arguing that the evidence was unlawfully obtained because the agents did not have a warrant, and manufactured any exigent circumstances that justified the arrest and search. Though Flores-Castaneda did not testify, the district court heard witness testimony and oral argument, made extensive findings of fact crediting the testimony of the agents, and denied the motion. Flores-Castaneda pleaded guilty, reserving the right to challenge on appeal the denial of his motion to suppress. The district court sentenced Flores-Castaneda to a 24-month term of imprisonment and a three-year term of supervised release. This appeal followed.

## STANDARD OF REVIEW

"In an appeal of a denial of a motion to suppress evidence, 'we review the district court's factual findings for clear error and its legal conclusions, including its ultimate conclusion as to the constitutionality of the law enforcement action,

de novo.'" *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009) (quoting *United States v. Chavez*, 281 F.3d 479, 483 (5th Cir. 2002)). "The evidence presented at the suppression hearing must be viewed in the light most favorable to the prevailing party." *Id.* The presence of exigent circumstances is a finding of fact, which is reviewed for clear error. *See United States v. Howard,* 106 F.3d 70, 74 (5th Cir. 1997); *United States v. Richard*, 994 F.2d 244, 248 (5th Cir. 1993). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed.'" *In re Missionary Baptist Found. of Am.*, *Inc.*, 712 F.2d 206, 209 (5th Cir. 1983) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). When a district court bases its ruling on a motion to suppress on oral testimony, "the clearly erroneous standard is particularly strong since the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Dortch*, 199 F.3d 193, 201 (5th Cir. 1999) (quoting *United States v. Shabazz*, 993 F.2d 431, 438 (5th Cir. 1993)).

## DISCUSSION

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. A warrantless intrusion into an individual's home "is presumptively unreasonable unless the person consents or probable cause and exigent circumstances justify the encroachment." *United States v. Gomez-Moreno,* 479 F.3d 350, 354 (5th Cir. 2007). The Government bears the burden of proving that a warrantless search or seizure was valid. *Id.*

### A.    Exigent Circumstances

The parties do not dispute that there was probable cause for the warrantless entry. Rather, they dispute whether there were exigent circumstances that were not manufactured by the agents.

4

The exigent circumstances exception to the Fourth Amendment applies "where the societal costs of obtaining a warrant . . . outweigh the reasons for prior recourse to a neutral magistrate." *United States v. Rodea*, 102 F.3d 1401, 1404 (5th Cir. 1996) (internal quotation marks and citation omitted). Such circumstances may exist if law enforcement officers reasonably fear for their safety or if firearms are present, *United States v. Hicks*, 389 F.3d 514, 527 (5th Cir. 2004), or if officers need to assist persons who are seriously injured or threatened with serious injury, *United States v. Troop*, 514 F.3d 405, 409 (5th Cir. 2008). However, the individual must be in need of immediate aid. *Id.* at 410.

There is no set formula for determining when exigent circumstances will justify a warrantless entry. *United States v. Blount*, 123 F.3d 831, 837 (5th Cir. 1997) (en banc). However, we have previously considered, among other factors, "(1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the reasonable belief that contraband is about to be removed; (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought; (4) the information indicating that the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of it and to escape are characteristics in which those trafficking in contraband generally engage." *United States v. Mata*, 517 F.3d 279, 287 (5th Cir. 2008); *see also Gomez-Moreno*, 479 F.3d at 354-55 (applying the factors in an alien smuggling case).

In this case, agents testified that (1) a cell phone associated with the alien smugglers was inside the residence, (2) alien smugglers generally employ guns in their trade; (3) after the agents knocked on the door, they heard movement inside but Flores-Castaneda did not open the door for approximately two minutes, which seemed long to the officers; and (4) a man inside the residence spotted the agents, turned, and ran back into the interior of the house despite

the agent's request for the man to return to the door. The agent who entered the house believed that the man was likely running to get a gun. The district court credited this testimony and found that the officers and hostages were in imminent danger, which danger justified the warrantless entry. This finding is not clearly erroneous.

## B.    Manufactured Exigency

Flores-Castaneda argues, however, that the exigent circumstances were created by the agents, who therefore cannot use them to justify their warrantless entry. *See United States v. Hearn*, 563 F.3d 95, 106 (5th Cir. 2009); *see also United States v. Webster*, 750 F.2d 307, 327-28 (5th Cir. 1984); *United States v. Thompson*, 700 F.2d 944, 949-51 (5th Cir. 1983). "When determining whether the government created the exigent circumstances, this Court considers not just the motivation of the officers, but also the reasonableness and propriety of the investigative tactics that created the exigency." *Hearn*, 563 F.3d at 106.

"Federal courts have recognized the 'knock and talk' strategy as a reasonable investigative tool when officers seek to gain an occupant's consent to search or when officers reasonably suspect criminal activity." *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001). However, a knock and talk is not reasonable when officers know that criminal activity is taking place inside a home and "[w]arrantless entry [is] a foregone conclusion the instant the agents reveal[] themselves." *United States v. Munoz-Guerra*, 788 F.2d 295, 298 (5th Cir. 1986). When agents have secured a location where they know criminal activity is taking place, and there is time to obtain a warrant, a knock and talk will not be reasonable because officers know that approaching the location will create exigent circumstances by causing the suspects to flee or destroy evidence. *Richard*, 994 F.2d at 248-49.

We have tended to analyze "manufactured exigency" cases on the ground of foreseeability. That is, we ask whether it was foreseeable to the officers that

approaching the location would cause the suspects to flee or destroy evidence. Perhaps the best example is in *Thompson*, where agents made a warrantless entry into a home when an officer, working undercover, was recognized by one of the suspects. 700 F.2d at 951. We remanded for a factual determination of whether the dangerous situation was inadvertent or whether the officer deliberately put himself in a situation where it was foreseeable he would be recognized. *Id.*; *see also United States v. Scheffer*, 463 F.2d 567, 574-75 (5th Cir. 1972), *cert. denied sub nom. Stecher v. United States*, 409 U.S. 984 (1972) (exigent circumstances manufactured when agents controlled timing of drug buy). By contrast, we have upheld warrantless entries when the agents were reacting to exigent circumstances they could not have foreseen. *See, e.g.*, *Hearn*, 563 F.3d at 105-07 (officers did not manufacture exigent circumstances when suspect opened hotel door several doors down as officers attempted to enter wrong room); *United States v. Newman*, 472 F.3d 233, 239 (5th Cir. 2006) (exigent circumstances not manufactured when suspect bolted out of front door and jumped over six-foot tall fence as officers were approaching for knock and talk). This foreseeability element explains our emphasis on whether officers made a show of force, since if the officers truly were uncertain about whether criminal activity was taking place inside a house, they would not approach it with guns drawn. *See, e.g.*, *Gomez-Moreno*, 479 F.3d at 356 (exigent circumstances manufactured when officers "created a show of force when ten to twelve armed officers met at the park, drove to the residence, and formed two groups—one for each of the two houses—with a helicopter hovering overhead and several officers remaining in the general area surrounding the two houses").

In this case, the district court made findings of fact and determined that the knock and talk was reasonable because Flores-Castaneda showed no inclination to run but came to the porch and spoke with the officers, and also that no show of force was made since there was no demand to "open up" or

No. 08-20619

visible brandishing of weapons. *United States v. Flores-Castaneda,* 2008 WL 2074060 at *2-3, 5 (S.D. Tex. May 14, 2008). The district court explicitly found that, though the officers had a suspicion of criminal activity in the house, "[t]hey did not know, however, if the hostages were still at the residence and so they needed to investigate further." *Id.* at *5. The district court found that the exigent circumstances were created by the second man spying the officers and retreating into the house in a manner that suggested he might be retrieving a weapon. *Id.*

There is obviously a plausible counter-narrative, since an agent did unholster his weapon before knocking on the door (though he did not display it) and the officers clearly suspected that this was the "stash house" where hostages were being held. The facts of this case are less benign than in other cases where we have affirmed the reasonableness of a knock and talk investigation. There is evidence to support a finding of unreasonableness, and were we hearing this case in the first instance we might well find this search to be unreasonable. Nonetheless, given the district court's credibility determinations and findings of fact, when we view the "entire evidence," we are not "left with a firm and definite conviction that a mistake has been committed." *In re Missionary Baptist Found. of Am., Inc.*, 712 F.2d at 209. Accordingly, we affirm.

## CONCLUSION

The judgment of the district court is AFFIRMED.