# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10101

United States Court of Appeals
Fifth Circuit

**FILED**

September 5, 2018

Lyle W. Cayce
Clerk

VERNON LINICOMN,

Plaintiff - Appellant

v.

MAURICO HILL; CHERYL MATTHEWS; DOES 1-3, Inclusive,

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before KING, DENNIS, and COSTA, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

Vernon Linicomn brought this 42 U.S.C. § 1983 action asserting that Dallas, Texas, police officers violated his Fourth Amendment rights by forcibly entering his house without a warrant, without his consent, and without reason to believe that any person inside was in imminent danger of harm; and by assaulting and arresting him with excessive force. Two of the officers, Maurico Hill and Cheryl Matthews, filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), which the district court granted. Vernon now appeals.

No. 17-10101

# I

## A

We review a district court's grant of a Rule 12(c) motion for judgment on the pleadings de novo. *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015). A Rule 12(c) motion may dispose of a case when there are no disputed material facts and the court can render a judgment on the merits based on "the substance of the pleadings and any judicially noticed facts." *Id.* An adequate pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A pleading offering only "labels and conclusions," "naked assertions," or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). To avoid dismissal, a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). We must construe the complaint in the light most favorable to the plaintiff. *Id.*

Public officials are entitled to qualified immunity unless the plaintiff can plead specific allegations demonstrating (1) the violation of a constitutional right that (2) was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A right is "clearly established" when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1130 (5th Cir. 2014) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

2

No. 17-10101

**B**

Vernon Linicomn alleged the following facts in his pleadings.[1]  He was awarded primary custody of his two minor children in his divorce from their mother, Linda, who suffers from mental disorders that render her unfit to be a custodial parent.  After the divorce, and prior to the incident involved in this lawsuit, Linda falsely reported to the City of Dallas's Police Department on numerous occasions that the welfare of the children was endangered while they resided with Vernon.  However, although the police responded on each occasion, no action was taken against Vernon because each of the reports proved to lack substance or justification.

On October 23, 2011, at approximately 4:40 p.m., Linda called 911 regarding the welfare of the children and told dispatch that Vernon was "abusing" the children.  Officers Gilbert and Oliver went to Vernon's house, knocked on the door, but received no response; they departed without taking further action.  At 9:20 p.m. that same night, Linda again called the police department and reported a "disturbance" pertaining to the children at Vernon's residence.  The Defendants, Officers Hill and Matthews, responded[2] and arrived at Vernon's house between 9:30 and 10:41 p.m.[3]  Upon arrival, the officers met Linda and Dallas paramedics and firefighters outside.  Linda informed the officers that her daughter was "lethargic and sick" inside Vernon's house.  The paramedics stated that they had been unable to gain

---

[1] At the motion to dismiss stage, we take the facts, as alleged or admitted by Vernon, as true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 589 (2007).

[2] We note that the Defendants, Officers Hill and Matthews, claim that they were not aware of Linda's prior false reports to the Dallas Police Department, including Linda's report earlier on the day of the incident giving rise to this litigation.

[3] The pleadings are inconsistent with respect to when the officers arrived at Vernon's house.

3

No. 17-10101

entry to Vernon's house. The officers tried to contact Vernon by calling his cell phone and knocking repeatedly at his front door. Vernon did not respond.

Officer Hill contacted his supervisor, Sergeant Melquiades Irizarry, who arrived on the scene soon after. Sergeant Irizarry spoke with Linda and directed Hill to announce through the police public address system that they would enter the house—with or without Vernon's cooperation. Eventually, Vernon answered the door. Vernon advised Sergeant Irizarry and Officer Hill, who were standing at the threshold of the doorway, that his daughter was asleep and did not need medical assistance. Meanwhile, Officer Matthews stood off to the side of the door with her back to Vernon and the other officers. The officers did not have a warrant to enter Vernon's house.

Vernon refused to allow anyone entry without a warrant. Sergeant Irizarry placed his hand on Vernon's shoulder and asked him to step aside so that paramedics could enter and verify that Vernon's daughter was safe. Vernon pushed Sergeant Irizarry's hand away. Officer Hill then clasped Vernon's right arm and shoulder. Vernon pushed Officer Hill away, retreated, and tried to close the door to the house. Officer Hill and Sergeant Irizarry prevented Vernon from closing the door, and Vernon ran toward the back of the house. Officer Hill ran after Vernon. Officer Matthews entered the house but remained near the front door. Inside the house, a struggle ensued. Officer Hill grabbed Vernon and tried to take him to the floor. Vernon resisted. Sergeant Irizarry sprayed Vernon with pepper spray. Vernon was then handcuffed, escorted outside, and treated by paramedics. The officers spoke with Vernon's children and confirmed that they had been asleep and were not ill. The children also confirmed that Linda had a history of making exaggerated claims about their welfare.

4

No. 17-10101

## C

Vernon filed suit in Texas state court against Officers Hill and Matthews,[4] alleging assault and battery as well as claims under 42 U.S.C. § 1983 for violations of his Fourth Amendment rights. The state court dismissed the assault and battery claims, and Officers Hill and Matthews removed the case to federal court. Officers Hill and Matthews affirmatively asserted the defense of qualified immunity, and the district court ordered Vernon to reply to that defense under Federal Rule of Civil Procedure 7(a). The district court ultimately granted the officers' motion for a judgment on the pleadings under Federal Rule of Civil Procedure 12(c), dismissing Vernon's § 1983 claims with prejudice. Vernon appeals that judgment. For the following reasons, we AFFIRM.

## II

The district court granted the officers' Rule 12(c) motion for judgment on the pleadings, holding that Vernon's amended complaint and Rule 7(a) reply to the Officers' answers did not overcome the officers' qualified immunity defense.[5] Vernon challenges that order, arguing that his pleadings sufficiently demonstrate that the officers acted objectively unreasonably and violated his clearly established Fourth Amendment rights by (1) entering his house without a warrant and (2) using excessive force by assaulting and pepper spraying him.

---

[4] Vernon also sued the City of Dallas and three unidentified officers (Does 1–3). However, Vernon abandoned his claims against the City in the district court by failing to name it as a defendant in his amended complaint. *MacArthur v. Univ. Tex. Health Ctr.*, 45 F.3d 890, 896 (5th Cir. 1995). The district court ultimately dismissed the claims against Does 1–3, after Vernon did not show good cause for his failure to effect service on them. *See* Fed. R. Civ. P. 4(m) and 6(b). Vernon has abandoned these claims by failing to brief them on appeal. *MacArthur*, 45 F.3d at 896.

[5] The court assumed, arguendo, that Vernon sufficiently alleged violations of his constitutional rights, deciding only whether the Officers' conduct was objectively reasonable in light of the clearly established law at the time.

5

No. 17-10101

## A

The Supreme Court has held that we have discretion to address either prong of the qualified immunity analysis first. *See Pearson*, 555 U.S. at 236 (holding that the two-step, qualified-immunity sequence set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), "should not be regarded as mandatory in all cases"). Further, the Court recognized that, even where defendants are clearly entitled to qualified immunity under the second prong, undertaking the two-step procedure "is often beneficial . . . [because it] promotes the development of constitutional precedent and is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable." *Id.* We believe this to be the case here. Accordingly, although we ultimately conclude that the officers were entitled to a judgment on the pleadings based on the second prong of the qualified-immunity inquiry, we begin our analysis with the first prong. *See id.*

## 1

Under the first prong of the qualified-immunity analysis, we consider whether the officers' actions violated Vernon's Fourth Amendment rights. *See Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (citing *Saucier*, 533 U.S. at 201). Vernon argues that the officers entered his house without a warrant and absent exigent circumstances or any other exception to the warrant requirement.

"Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Ct.*, 407 U.S. 297, 313 (1972). A warrantless search of a person's home is presumptively unreasonable, unless an exception to the warrant requirement applies. *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (citing *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006)). One exception is the existence of exigent circumstances justifying immediate action. *Rice*, 770 F.3d at 1130–31 (citing

No. 17-10101

*Stuart*, 547 U.S. at 403). Whether exigent circumstances exist to justify a warrantless search depends on whether, given the totality of the circumstances, the search was objectively reasonable. *See Stuart*, 547 U.S. at 404. Officers cannot manufacture exigency through their own action or inaction. *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001). In assessing whether the officers created the exigency, we focus on the "reasonableness of [their] investigative tactics leading up to the warrantless entry." *Id.* at 720.

Exigent circumstances exist where, inter alia, officers must enter a home to provide emergency assistance to preserve life or prevent serious injury. Officers may enter a home "without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Stuart*, 547 U.S. at 403 (finding exigent circumstances where officers looked through a window and witnessed a bloody fight inside the house). "Officers do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception." *Michigan v. Fisher*, 558 U.S. 45, 48 (2009) (internal quotation marks omitted). The Supreme Court has found exigent circumstances where the responding officers "encountered a tumultuous situation in the house—and . . . also found signs of a recent injury." *Id.* at 49; *see also Stuart*, 547 U.S. at 400–01.

We have declined to apply the emergency aid exception absent strong evidence of an emergency at the scene or an imminent need for medical attention. In *Gates v. Tex. Dep't of Protective & Reg. Servs.*, 537 F.3d 404, 422 (5th Cir. 2008), we concluded that there were no exigent circumstances justifying the warrantless entry of social workers into a home to investigate whether children were being abused and neglected. This conclusion was based on several findings: the alleged abuser was not at home and the children were not in immediate danger; the purpose of the entry was to interview the children

7

and not to guard them against immediate danger; and one of the social workers testified that he did not witness any exigent circumstances or emergencies at the home. *Id.* at 422–23. Additionally, in *United States v. Troop*, we held that it was unreasonable for border patrol agents to conclude that the persons they tracked to a house needed immediate aid based solely on the fact that their footprints showed signs of fatigue. 514 F.3d 405, 410 (5th Cir. 2008). We found that signs of fatigue alone, absent evidence "of medical distress requiring immediate aid, such as loss of blood, signs of physical illness, or evidence that the individual had been carried or dragged," did not constitute exigent circumstances justifying immediate entry into the house. *Id.*

The officers argue that they acted reasonably in entering Vernon's house, claiming that they were unaware of Linda's mental illness and history of making groundless 911 calls and therefore had reason to take her call seriously that day, as she was the children's mother. Even so, under the facts alleged and admitted by Vernon, their warrantless entry was still not justified by exigent circumstances. Linda's 911 call that night alleged that there was a "disturbance" at Vernon's address. But the officers had the burden of proving the existence of exigency, and failed to corroborate her call. *See Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984) ("Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries."); *see also United States v. Rico*, 51 F.3d 495, 500–01 (5th Cir. 1995) (officers have the burden of proving the existence of exigency). The record reflects that the officers spoke to Linda outside Vernon's house, but the officers allege only that Linda informed them that her daughter was "lethargic and sick" before they decided to enter. The officers' responsive pleadings do not demonstrate that they inquired into the basis for Linda's assertion that the children were

"lethargic and sick," or the circumstances surrounding Vernon's possession of the children on that day.  Moreover, the officers do not contend that Linda told them Vernon hurt either child or in any way caused his daughter's condition; nor do they claim that they were aware of Linda's first 911 call that day, alleging that Vernon was abusing the children.  *Cf. Gates*, 537 F.3d at 422 (finding "no immediate danger" to the children where the alleged abuser was not home); *Wernecke v. Garcia*, 591 F.3d 386, 389, 396 (5th Cir. 2009) (holding that the warrantless entry of a state official to investigate the medical neglect of a child was justified by exigent circumstances, where the investigator had a temporary-custody order based on a court's finding that the child's physical health and safety were in "immediate danger," the child was known to have Hodgkin's disease, and the child's parents had refused to consent to radiation treatment).

The officers arrived at Vernon's house up to one hour and twenty-one minutes after Linda placed the call.  Unlike the tumultuous situations the officers encountered in *Stuart* and *Fisher*, the officers arrived at Vernon's house to find a relatively calm scene outside with no external signs of struggle indicating the need to prevent violence or restore order.

Although Vernon did not answer his cell phone and did not initially respond to the repeated knocks at his front door, his failure to respond did not constitute exigency.  *See Troop*, 514 F.3d at 411 (holding that when a person does not answer the door, officers should "change[] their strategy by retreating cautiously, seeking a search warrant, or conducting further surveillance." (citing *United States v. Gomez-Moreno*, 479 F.3d 350, 355–56 (5th Cir. 2007))); *see also United States v. Hill*, 649 F.3d 258, 266 (4th Cir. 2011) (an officer's belief that there was someone inside the house who was not answering the door "is simply not sufficient evidence to support a warrantless entry into a private home without some articulable fact that justified urgent entry by police").  And

when Vernon eventually did come to the front door, he told the officers that his daughter "was asleep, not ill, and not in need of assistance."[6] The officers have not demonstrated that they observed or received any information, aside from Linda's 911 call, indicating that Vernon's daughter's condition had devolved beyond "lethargic and sick," or that she needed immediate emergency aid.[7] *Cf. United States v. Flores-Castaneda*, 384 F. App'x 364, 367 (5th Cir. 2010) (finding imminent danger justifying warrantless entry where smugglers held hostages inside a home; they had a cell phone and possible weapons; the officers heard movement inside, but no one opened the door for two minutes; and a man inside the residence spotted the officers, turned, and ran back into the interior of the house). Thus, the officers did not show that they reasonably believed their warrantless entry was justified by exigent circumstances.

Finally, the officers contend that they were justified in entering Vernon's home to prevent him from obtaining a weapon inside. However, the officers do not allege that they had any information indicating the presence of a weapon inside the home, nor did they articulate such a suspicion before entering. And the pleadings demonstrate that Vernon attempted to close the door and retreat into his house as a result of the officers' request to enter without a warrant. Vernon's retreat in response to the officers' actions did not give rise to exigent circumstances. *Cf. Jones*, 239 F.3d at 720 (finding that the suspect, not the

---

[6] In their answer to the amended complaint, the officers stated that Vernon appeared "irate and upset" upon answering the door, and Vernon admitted the allegation. But an appearance of anger, without more, does not establish exigency. *Cf. Thacker v. City of Columbus*, 328 F.3d 244, 254 (6th Cir. 2003) (finding that the totality of the circumstances justified entry to secure the safety of the police, paramedics, and other people possibly inside the home where "[s]omeone had placed a 911 call reporting an emergency—a cutting or stabbing—at the residence. [The plaintiff] answered the door shirtless, with blood on his legs and boxer shorts. It was apparent that [the plaintiff] himself was injured . . . [he] acted belligerently and used profanity. . . . [and] [h]e appeared intoxicated.").

[7] As explained above, Officers Hill and Matthews claim they had no knowledge of Linda's call earlier that day, alleging that Vernon was abusing the children. *See supra* note 2.

No. 17-10101

officers, created the exigency where the suspect left the door open with a handgun in plain view).  In sum, as Vernon adequately alleged in his amended complaint, "[a]t the time of Defendants' warrantless entry, Defendants observed no crime being committed, and observed no fact or circumstance tending to give rise to an objectively reasonable concern for the safety of Plaintiff's children," apart from Linda's uncorroborated statement that her child was "lethargic and sick."  We therefore conclude that Vernon has facially pleaded sufficient facts to support a plausible claim that the officers violated his Fourth Amendment rights when they entered his house without a warrant and absent proof or showing of exigent circumstances.  *See In re Great Lakes*, 624 F.3d at 210 (quoting *Iqbal,* 556 U.S. at 678).

**2**

Though we find plausible Vernon's allegations that the officers' warrantless entry into his house violated his Fourth Amendment right, we cannot conclude, under the second prong of the qualified immunity analysis, that this right was clearly established under the circumstances of this case at the time of the officers' entry.  *See Trammell*, 868 F.3d at 343.  The law is clearly established when there is "controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity."  *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (citing *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc)).  The Supreme Court "does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."  *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).  An officer is entitled to qualified immunity "unless *all* reasonable officials in the defendant's circumstances would have then known that the

11

defendant's conduct violated the United States Constitution." *Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th Cir. 2001).

Vernon argues that, under *Troop*, the Officers should have known that no exigent circumstances existed to justify their warrantless entry into his house. In *Troop*, we found that signs of fatigue in footsteps "alone [were] insufficient to demonstrate exigent circumstances requiring an immediate entry into the house," noting the lack of evidence "of medical distress requiring immediate aid, such as loss of blood, [or] signs of physical illness." 514 F.3d at 410. Here, however, the officers acted in response to Linda's 911 call asking for assistance checking on her sick and lethargic child. Because Linda's call could reasonably be construed as evidence that her daughter was physically ill, *Troop* does not clearly establish that the officers' actions were unreasonable in light of clearly established law. While *Troop* may be relevant to the question of whether the exigent circumstances exception applies, it is not "controlling authority . . . that defines the contours of the right in question with a high degree of particularity." *Hogan*, 722 F.3d at 735. Nor does *Troop* "place[] the statutory or constitutional question beyond debate." *See Kisela*, 138 S. Ct. at 1152.

Vernon does not cite to any controlling authority establishing that the officers' entry into his house would have violated a clearly established right under the circumstances. Accordingly, we affirm the district court's decision to grant the officers' motion for judgment on the pleadings on the basis of qualified immunity.

**B**

The district court concluded that the officers used reasonable force in light of the clearly established law at the time. The court noted Vernon's admission that he was not pepper sprayed by the officers, but by Sergeant Irizarry. It further concluded that Officer Matthews did not touch Vernon,

except to assist him outside of the house to receive medical care.  Finally, the court found that Vernon failed to allege any facts to negate the assertion that Officer Hill's use of force was reasonable to prevent him from accessing any weapons inside his house.

Vernon argues that his pleadings demonstrate that he was assaulted and pepper sprayed and suffered great bodily harm as a result of the officers' unreasonable use of force.  To prevail on an excessive force claim, the plaintiff must show (1) an injury (2) that resulted directly and only from the use of force that was clearly excessive to the need and that (3) the force used was objectively unreasonable.  *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000).  Excessive force claims are fact-intensive, and courts must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham v. Connor,* 490 U.S. 386, 396 (1989)).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013) (quoting *Graham*, 490 U.S. at 396).  We evaluate the reasonableness of each officer's actions separately.  *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012).

We agree with the district court's findings and conclusions as to the officers' use of force.  First, Vernon conceded that he was pepper sprayed by the officers' supervisor, Sergeant Irizarry.  Sergeant Irizarry is not a defendant in this case.[8]  Vernon's allegations of being pepper sprayed therefore do not

---

[8] In Vernon's original petition in state court, he alleged that Doe 1 "entered Plaintiff's home without a warrant" and "assaulted Plaintiff, causing great bodily harm."  To the extent

"focus[] specifically on the conduct of" Officers Hill and Matthews and cannot help him overcome their defense of qualified immunity. *See Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999) (a plaintiff must allege facts focusing specifically on the conduct of the individuals who caused the plaintiff's injury). Second, Vernon did not allege any facts demonstrating that Officer Matthews used any force on him at all. And he admitted the allegations contained in Officer Matthews's answer to his complaint, which does not describe Officer Matthews as having any contact with Vernon until she helped escort him outside for medical treatment.

Finally, Vernon claims that Officer Hill used excessive force in restraining him. However, his claim is undermined by his admission of the facts in Officer Hill's answer to his complaint.[9] Vernon admitted that Officer "Hill clasped [Vernon's] right arm and shoulder" *after* Vernon pushed Sergeant Irizarry's hand away. Vernon next admitted that Officer Hill "grabbed [him] and attempted to take him to the ground" *after* he pushed Officer Hill's hand away and ran into the house. Vernon further admitted that he and Officer Hill struggled in the hallway. Lastly, Vernon admitted that Officer Hill handcuffed and escorted him outside for medical treatment *after* Vernon was pepper sprayed by Sergeant Irizarry. In light of Vernon's admission that Officer Hill used force only after Vernon made physical contact with him and Sergeant Irizarry, and again after Vernon fled to the back of his house and engaged in a physical struggle with Officer Hill, we conclude that Vernon's pleadings do not sufficiently establish that Officer Hill's use of force was objectively unreasonable. *See Poole*, 691 F.3d at 629 (finding that officers responded to

that Vernon intended to name Sergeant Irizarry as Doe 1, he has abandoned this claim, as discussed above. *See supra* note 3.

[9] Vernon admitted the facts in Officer Hill's answer to his complaint "with the exception that he [had] no information and belief with respect to the beliefs or mental status of the officers."

plaintiff's "escalating verbal and physical resistance" with "measured and ascending" actions where plaintiff persistently resisted the officers' commands); *Galvan v. City of San Antonio,* 435 F. App'x 309, 311 (5th Cir. 2010) (finding the same where officers reacted with verbal warnings, then pepper spray, then hand-and-arm manipulation techniques, then a Taser, after plaintiff ran from officers, responded aggressively when they caught him, and engaged in a physical struggle).   Accordingly, we affirm the district court's judgment as to this claim.

**\*\*\***

For these reasons, we AFFIRM the district court's judgment.